UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY BOBRO AND KEVIN DENNIS, individually and on behalf of other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RYDER TRANSPORTATION SOLUTIONS, LLC AND RYDER INTEGRATED LOGISTICS, INC.,<br><br>Defendants. | No. 24 CV 10807<br><br>Judge Georgia N. Alexakis |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Anthony Bobro and Kevin Dennis are truck drivers for defendants Ryder Transportation Solutions, LLC and Ryder Integrated Logistics, Inc. (collectively "Ryder"). Plaintiffs sued Ryder in Illinois court, [1-1], alleging it had unlawfully collected and stored their biometric information—particularly their facial geometry, retina scans, and iris scans—in violation of Illinois' Biometric Information Privacy Act ("BIPA"). Plaintiffs also seek to represent a class of similarly situated employees. Ryder removed to federal court under the Class Action Fairness Act ("CAFA") [1] and now moves to dismiss [12]. Plaintiffs, for their part, move to remand their claims under Section 15(a) of BIPA to state court, arguing that those claims lack Article III standing. [24].

For the reasons below, the motion to dismiss [12] is denied, and the motion to remand [24] is granted.

I.  **Legal Standards**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor (as the Court does in the background section that follows), but a court need not accept legal conclusions or "threadbare recitals" supported by "conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to remand, the general rule is that a defendant may remove an action filed in state court to federal court in any case in which the plaintiff could have filed the case in federal court in the first place. 28 U.S.C. § 1441(a). The party seeking removal bears the burden of demonstrating federal jurisdiction, "and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). A plaintiff opposing removal may move to remand the case to state court. See 28 U.S.C. § 1447(c). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." *Id.* (emphasis added); *see GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 625–26 (7th Cir. 2013).

II.  **Background**

Plaintiffs worked for Ryder as truck drivers in Illinois. [1-1] ¶ 1. Ryder "operate[s] fleets of trucks and tractor-trailers including in the State of Illinois." *Id.* ¶ 2. As part of their operations, Ryder uses "in-cab biometric camera[s]" in their

trucks. *Id.* These cameras point towards the truck drivers and "capture, collect, or otherwise use" biometric information such as facial geometry or retina scans. *Id.* ¶¶ 2–3, 18. Each truck has a separate biometric camera to monitor each driver. *Id.* ¶ 20. These cameras collect biometric information by "scanning [drivers'] facial geometry in order to monitor their behavior while driving." *Id.* ¶ 21. Plaintiffs would receive alerts from the cameras if they looked away from the road, and Ryder would give feedback to plaintiffs based on behavior identified by the cameras. *Id.* ¶¶ 21–22.

Plaintiffs were subject to monitoring by the biometric cameras as a condition of their employment. *Id.* ¶ 25. But despite Ryder's biometric-information collection, plaintiffs and other Ryder drivers "were not notified where their biometrics were stored, for how long [Ryder] would keep their biometrics, or what might happen to this valuable information." *Id.* ¶¶ 5, 27.

On July 18, 2024, plaintiffs sued Ryder in Illinois court under Sections 15(a) and 15(b) of BIPA, seeking to represent a class of similarly situated drivers. [1-1]. Section 15(a) requires that private entities possessing biometric information develop and publicly disclose written policies establishing a retention schedule and guidelines for the destruction of that information. 740 ILCS 14/15(a). Section 15(b) requires those same entities inform and obtain written consent from people from whom biometric information is being collected. *See* 740 ILCS 14/15(b).

Ryder removed this matter to federal court on October 18, 2024, alleging federal jurisdiction existed under CAFA because minimal diversity existed and the amount in controversy exceeded $5 million. [1] at 1 (citing 28 U.S.C. §§ 1441, 1446,

1332(d), and 1453(b)). Ryder now moves to dismiss [12], while plaintiffs move to remand [24].

## III. Analysis

### A. Motion to Remand

The Court begins, as it must, with jurisdiction. *See Prosser v. Becerra*, 2 F.4th 708, 713 (7th Cir. 2021). The Court can only reach the merits if the plaintiffs have Article III standing, a requirement of federal subject-matter jurisdiction. *Id.; Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see* U.S. Const. art. III, § 2. "If some parts of a single suit are within federal jurisdiction, while others are not, then the federal court must resolve the elements within federal jurisdiction and remand the rest—unless the balance can be handled under the supplemental jurisdiction [statute]." *Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 819 (7th Cir. 2010); *see* 28 U.S.C. §§ 1367(c), 1441(c).

Plaintiffs argue that because their Section 15(a) claims lack Article III standing that the Court lacks jurisdiction over them and must remand them to state court. [24] at 6–7. The Court agrees. Section 15(a) mandates that "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information." 740 ILCS 14/15(a). In *Bryant v. Compass Group*, the Seventh Circuit concluded that

4

because the duty to publish a written policy was owed to the public generally, failure to do so did not create "a concrete and particularized injury" that could give Article III standing, and that the Section 15(a) claims at issue had been appropriately remanded to state court. 958 F.3d 617, 626 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020).

Ryder contends that the instant case is more like *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020)—which did find Article III standing for a Section 15(a) claim—than *Bryant*. [26] at 2–7. The key difference in *Fox* was that the plaintiff alleged not only that the defendant had "failed to develop, publicly disclose, and implement a data-retention schedule and guidelines for the permanent destruction of its employees' biometric identifiers" but also that the defendant "failed to permanently destroy [plaintiff's] biometric data when she left the company and still has not done so." *Fox*, 980 F.3d 1146, 1150 (7th Cir. 2020). Because the "unlawful retention of biometric data inflicts a privacy injury in the same sense that an unlawful collection does," a Section 15(a) claim involving unlawful biometric data *retention* creates a sufficiently concrete and particularized injury to create Article III standing. *Id*. at 1154–55; *see also id*. at 1154 (claim in *Bryant* "was extremely narrow, alleging *only* a violation of the section 15(a) duty to *publicly disclose* data retention and destruction protocols.").

Plaintiffs' complaint mirrors the "extremely narrow" claim in *Bryant*. Under Count I of the complaint, plaintiffs allege that Ryder "violated Section []15(a) … by failing to develop and/or make public its written retention schedule or guidelines for

5

permanently destroying biometric identifiers and biometric information as specified by BIPA." [1-1] ¶ 37; *see also id.* ¶ 29 ("Defendants did not disclose to Plaintiffs, class members, or the public its written retention schedule and guidelines for permanently destroying workers' biometric data."). The complaint makes no factual allegations regarding whether the biometric data was retained.

Ryder seizes on one difference between the instant case and *Bryant* to argue that *Fox* rather than *Bryant* controls here: plaintiffs' allegation that Ryder never *developed* a policy in addition to the allegation a policy was never published. [26] at 5. Ryder relies particularly on *Marsh v. CSL Plasma Inc.,* which concluded that under *Fox* "an allegation that [a defendant] has failed to comply with the Act's requirement that a collector of biometric information develop a retention policy" was sufficient to give Article III standing. 503 F. Supp. 3d 677, 683 (N.D. Ill. 2020); *see also Fleury v. Union Pac. R.R. Co.,* No. 20-CV-00390, 2022 WL 1803357, at *3 (N.D. Ill. June 2, 2022) ("[T]he failure to develop retention and destruction policies once (or before) an entity begins retaining a person's biometric data inflicts a privacy injury in the same way that unlawful collection does.").

But this approach reads *Bryant* too narrowly and *Fox* too broadly—at least as applied to the specific allegations before this Court. The core of *Bryant* is that a duty "owed to the public generally" is insufficiently concrete and particularized to give Article III standing, *Bryant,* 958 F.3d at 626, while the core of *Fox* is that unlawful *retention* of an individual's biometric data creates a concrete and particularized privacy harm analogous to the unlawful collection of that data, *see Fox*, 980 F.3d at

6

1155. *See also id.* at 1154 (concluding that the district court had subject matter jurisdiction over plaintiff's Section 15(a) claim where plaintiff alleged defendant had "violat[ed] the full range of its section 15(a) duties by failing to develop, publicly disclose, *and comply with* a data-retention schedule and guidelines for the permanent destruction of biometric data," which resulted "in the unlawful retention … and the unlawful sharing of her biometric data") (emphasis in original).

At this phase of the case the Court must draw inferences in plaintiffs' favor, not against them. *See Schur*, 577 F.3d at 758 (courts should "resolv[e] any doubt in favor of the plaintiff's choice of forum in state court"). The complaint makes no allegation of retained biometric information, so the Court cannot infer that data was retained, let alone unlawfully so. As a practical matter, it may be that the failure to develop a biometric data retention and destruction policy tends to lead to the unlawful retention of biometric data. But it would not inevitably do so. Perhaps Ryder's informal practice was to "permanently destroy[] … biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied," 740 ILCS 14/15(a)—in which case no privacy harm would have occurred. Ryder in effect asks the Court to assume that it violated the law beyond what plaintiffs allege in order to assert jurisdiction, but the Court cannot oblige this request. *See Kislov v. Am. Airlines, Inc.*, 566 F. Supp. 3d 909, 914 (N.D. Ill. 2021) (no subject matter jurisdiction over Section 15(a) claim where plaintiffs did not allege that defendant "unlawfully retained their biometrics"); *Colon v. Dynacast, LLC*, No. 20-CV-3317, 2021 WL 492870, at *5 (N.D. Ill. Feb. 10, 2021) (remanding plaintiff's

7

Section 15(a) claim for lack of subject matter jurisdiction where district court did not "read[] the complaint as alleging … Defendant's failure to comply with any data policy"); *Marquez v. Google LLC,* No. 20 C 4454, 2020 WL 6287408, at *2 (N.D. Ill. Oct. 27, 2020) (no Article III standing when "[n]owhere does the Complaint address compliance with mandated BIPA § 15(a) policies or deletion requirements"). *Compare with Marsh*, 503 F. Supp. 3d at 682 (citing Paragraph 20 of the plaintiff's complaint which specifically alleged that plaintiffs "are aggrieved by Defendant's *failure to destroy their biometric data* when the initial purpose for collection or obtaining such data has been satisfied") (emphasis added).

Ryder also points to the plaintiffs' class allegations, which assert that one common question of fact to the putative class may include "[w]hether [Ryder] destroyed Plaintiffs' and the Class's biometric identifiers and/or biometric information once that information was no longer needed for the purpose for which it was originally collected." [26] at 5; [1-1] ¶ 32(b). But to ask a question is not to answer it, and a question is not an allegation. Plaintiffs have simply not alleged that their biometric data was unlawfully retained, and without unlawful retention of biometric data the failure to develop a written policy is the sort of duty to the public that does not create standing. *See Colon*, No. 20-CV-3317, 2021 WL 492870, at *5 (concluding that it lacked subject matter jurisdiction over plaintiff's Section 15(a) claim even though "a common class question" alleged in the complaint was whether defendant "complied with" a retention and deletion policy). The Court thus lacks subject-matter jurisdiction over the Section 15(a) claims under *Fox*.

8

B. **Motion to Dismiss**

For the reasons given above, Ryder's motion to dismiss is denied as moot as to the Section 15(a) claim. The Court will therefore only consider Ryder's motion to dismiss as it pertains to the Section 15(b) claims.

Ryder makes a number of arguments for why dismissal is appropriate under Federal Rule of Procedure 12(b)(6). Ryder begins by arguing that plaintiffs have failed to sufficiently allege that biometric information was collected, relying primarily on *Martell v. X Corp.*, No. 23 C 5449, 2024 WL 3011353 (N.D. Ill. June 13, 2024). [13] at 3–5. In *Martell*, plaintiff uploaded a photograph of himself on a social media website that was automatically analyzed by a tool called "PhotoDNA" to determine if the photograph violated content policies. *Martell*, No. 23 C 5449, 2024 WL 3011353, at *1. PhotoDNA created a unique digital signature of the photograph, known as a "hash," to compare against other photographs' hashes, and Martell believed that this necessarily created a scan of his facial geometry. *Id*. The court granted the defendant's motion to dismiss because "[t]he fact that PhotoDNA creates a unique hash for each photo does not necessarily imply that it is scanning for an individual's facial geometry when creating the hash." *Id*. at *2.

But no such inferential leap is required here. Plaintiffs directly allege that "Defendants use biometric cameras in the cabs of their trucks" and that "these cameras collect and store the biometric data of Defendants' drivers by scanning their facial geometry." [1-1] ¶¶ 18, 21. Facial geometry is a biometric identifier under the plain text of the statute. 740 ILCS 14/10. The Court must take this allegation as true, and it is sufficient under the Rule 12(b)(6) standard. *See Hernandez v. Omnitracs,*

9

*LLC*, No. 1:22-CV-00109, 2024 WL 1376352, at \*7 (N.D. Ill. Mar. 31, 2024) (substantively identical allegations stated a claim).

Ryder also argues that plaintiffs have not adequately alleged that Ryder's cameras "identify individuals," relying on *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1124-25 (9th Cir. 2024). But it is not clear this is a requirement under the language of the statute. *See Konow v. Brink's, Inc.*, 721 F. Supp. 3d 752, 757 (N.D. Ill. 2024) ("This court is not certain that the 'uniquely identifying' test is supported by BIPA's plain language."). But even if the Court assumes that it is, plaintiffs allege that they were "required to provide Defendants with their *personalized* biometric identifiers and the biometric information derived therefrom" and discuss the "the collection, storage or use of Plaintiffs' *unique* biometric identifiers." [1-1] ¶¶ 4, 28 (emphases added). At this early phase, these allegations provide enough to infer that the biometric data collected allowed for individual identification.

Ryder next argues that plaintiffs seek an "impermissible double recovery" for the alleged BIPA violations because they are "poised to recover in the settlement of a nearly-identical BIPA class action claim" in *Lewis et al. v. Lytx, Inc. et al.,* No. 3:22-cv-00046-NJR. [13] at 8. But district courts are generally prohibited from considering matters outside the pleadings at the motion to dismiss phase, although there is an exception for documents that are referenced by the complaint and central to the claim. *See Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022). Those criteria cannot be met here since the preliminary settlement agreement upon which Ryder wishes to rely did not exist when the operative complaint was filed. *See*

10

[1-1] (filed on July 18, 2024); [13] at 9 (preliminary settlement agreement filed November 22, 2024). Even if the Court could consider the *Lewis* agreement, Ryder also does not explain why a proposed settlement in a separate case—to which the parties agree plaintiffs are not currently bound—could render plaintiffs' claims in this case infirm under Rule 12(b)(6). Would Ryder accept an argument from plaintiffs that a proposed settlement agreement in a different case established BIPA liability on Ryder's part? Doubtful. If Ryder believes that a hypothetical future settlement agreement in a different case is relevant to a hypothetical future damages calculation in this case, it can return to the argument when the issue is no longer hypothetical.

Ryder's other arguments fare no better. Ryder argues that plaintiffs' claims are "barred by extraterritoriality" because they "purport to assert claims on behalf" of "out-of-state drivers such as Plaintiff Bobro." [13] at 11–12. Illinois law presumes that Illinois statues do not apply extraterritorially unless the statute includes express provisions saying so, *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184–85 (2005), which BIPA does not. Ryder relies in part on *Hernandez*, No. 1:22-CV-00109, 2024 WL 1376352, at *6, in which the plaintiff "allege[d] that he worked as a truck driver in Illinois," that similar driver-monitoring cameras were installed in his truck, and that "the [camera] in [the plaintiff's] truck scanned and collected his facial geometry without his consent." *Id.* Based on those allegations, *Hernandez* concluded it could reasonably infer that the alleged BIPA violations "occurred 'primarily and substantially' in Illinois," meaning the extraterritoriality doctrine did not bar the BIPA claim. *Id.* Plaintiffs here make substantively identical allegations to those in

11

*Hernandez, see* [1-1] ¶ 14 ("Plaintiff Bobro was subject to the same biometric collection practices as other of Defendants' drivers within the State"); *id.* ¶ 30 (proposed class of "All individuals who worked as drivers for Defendants *in Illinois*") (emphasis added), and the Court sees no reason to differ from the result in *Hernandez*. Therefore, accepting the allegations in the complaint as true and drawing inferences in plaintiffs' favor, the BIPA violations alleged occurred primarily and substantially in Illinois.

Ryder next argues that plaintiffs' Section 15(b) claims are preempted by Federal Motor Carrier Safety Administration regulations and the Federal Aviation Administration Authorization Act. [13] at 2, 13–15. Ryder cites no caselaw for the proposition that motor-carrier safety regulations preempt BIPA, and the Court has located none either. Ryder provides no reason why a camera intended to monitor driver behavior would need to collect biometric information like facial geometry or retina scans—or, more to the point, why it would need to do so without a driver's informed consent. *C.f. Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2022 WL 787955, at *4 (N.D. Ill. Mar. 15, 2022) ("The state law simply requires consent and an appropriate data retention policy. If federal law permitted *unconsenting* biometric [data collection] or *indefinite retention* of biometric information, then BIPA conflict preemption might arise. But this is not the case.").

As to the FAAAA, which preempts state laws "related to a price, route, or service of any motor carrier," 49 U.S.C. § 14501(c)(1), Ryder argues that "[a]pplication of BIPA would inevitably impact Ryder's ability to hire and retain qualified drivers,

12

as drivers may not wish to consent to cameras in their vehicles despite the evident benefit to them and the driving public, which in turn increases recruiting spend, increases time to fill positions, and ultimately burdens the rates and services Ryder offers to customers." [13] at 15. Ryder relies on *Kislov v. American Airlines, Inc.*, which concluded that the FAAAA preempted a BIPA claim related to "voiceprint" data collected in the course of airline customer service. No. 17 C 9080, 2022 WL 846840, at *8 (N.D. Ill. Mar. 22, 2022).

But *Kislov* also noted that "there no preemption where the state action's effect on rates, routes, or services is 'tenuous, remote, or peripheral.'" *Id.* at *2 (citing *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 368, 370–71 (2008)). And any impact BIPA may have on Ryder "is—on the present record at least—not just indirect but also highly speculative." *Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2019 WL 5635180, at *3 (N.D. Ill. Oct. 31, 2019) (denying motion to dismiss on based on FAAAA preemption). Ryder proposes some number of truck drivers who are totally fine being constantly monitored by a video camera but who draw a firm line at consenting to have their facial geometry collected. Such people may exist, but the connection between them and Ryder's rates is tenuous at best.

## IV. Conclusion

For the foregoing reasons, the motion to remand [24] is granted and the motion to dismiss [12] is denied. The Court severs plaintiff's claim arising out of an alleged violation of 740 Ill. Comp. Stat. Ann. 14/15(a) and directs the Clerk to remand that claim to the Circuit Court of Cook County. The Court retains jurisdiction over plaintiff's remaining BIPA claims. Counsel are directed to file a joint status report,

including a discovery plan and a statement reflecting any interest in a referral to the assigned Magistrate Judge for a settlement conference, by 8/18/25.

_____
Georgia N. Alexakis
United States District Judge

Date: 7/28/25